IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 11, 2015

**STATE OF TENNESSEE v. JULIUS WIEL WALTON**

**Appeal from the Circuit Court for Robertson County**
**No. 2013-CR-132      Michael R. Jones, Judge**

---

**No. M2014-01337-CCA-R3-CD – Filed May 12, 2015**

---

The Defendant-Appellant, Julius Wiel Walton, was convicted by a Robertson County jury of sexual battery for an incident involving his granddaughter. The trial court sentenced the Defendant to two years to be served on probation. On appeal, the Defendant challenges the sufficiency of the evidence supporting his conviction. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROGER A. PAGE, JJ., joined.

Roger E. Nell, District Public Defender; Rosemary Thomas, Assistant District Public Defender (on appeal); and Collier W. Goodlett, Assistant District Public Defender (at trial), Springfield, Tennessee, for the Defendant-Appellant, Julius Wiel Walton.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael M. Stahl, Assistant Attorney General; John W. Carney, District Attorney General; and Jason White, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On the evening of December 24, 2012, the victim, S.W.,[1] was at her grandparents' house to celebrate Christmas Eve. It was a family tradition to celebrate the holiday at her grandparents' house, and other family members were present that night, including her father. The victim testified that she had visited her grandparents' home on many

---

[1] It is the policy of this court to protect the victims of sex crimes by identifying them and their relatives by their initials only.

occasions and regularly spent the night with her grandmother when her father was traveling for work. She explained that her grandparents did not share a bedroom, and although she had a "good relationship" with her grandfather, the Defendant in this case, she did not talk with him often.

On the night of the incident, the family ate dinner together and then opened presents. After opening presents, "everybody was sitting in the living room talking and laughing and hanging out." The victim was sitting with her grandmother when she noticed the Defendant across the living room. He motioned to her to come over to him, and when she complied, he told her "he had to show [her] a surprise," and led her to his bedroom. She testified that no one else was in the bedroom and that the Defendant opened the top drawer of his dresser and pulled out a photograph of the victim. The photograph was several years old and had been enlarged to an eight by ten size. The victim testified that after the Defendant showed her the photograph, he "started talking about how pretty [she] was" and told her that he would like to marry her. He stated that "he especially likes it when he gets to hold [her]," and proceeded to "hug" her. He attempted to kiss the victim, but she turned her head so he kissed her on the cheek. He told her that she "was going to have to do better than that," and then "tongue kissed" her and "groped" one of her breasts over her clothes. The victim testified that the kiss lasted "about three seconds" and that the Defendant stroked her breast "the time of the kiss." The victim testified that she was "kind of terrified" and "wanted to get out of there." She pulled away from the Defendant, and he told her, "I was just playing with you. I was just messing."

After the incident, the victim returned to the living room and asked her father if they could leave. She did not say anything about the incident to anyone because she "didn't want to ruin everybody's Christmas[.]" When she and her father arrived home, she "got really emotional" and told her father what happened. Her father reported the incident to the police later that evening, and she gave a statement at the Child Advocacy Center several days later. The victim identified the Defendant in court as the man who kissed her and stroked her breast on Christmas Eve 2012.

The Defendant testified on his own behalf at trial. He testified that he asked the victim to follow him to his bedroom because he had an eight by ten photograph of her that he wanted to give to her father. He testified that while she was in his bedroom, he hugged her and gave her a "grandkid kiss," but he denied sticking his tongue in her mouth or touching her breast. He agreed that he touched the fabric on her dress near her collar bone, explaining:

She had on a dress that had a thing across up here [near her collar bone] . . . [and] I asked her, I said what is that honey? And she said it's leather. I

said no, baby, it don't look like leather.  And so I just over and touched it . . . with one finger and I said it's not leather, baby.  It's vinyl.

The Defendant also agreed that he complimented the victim on her appearance, stating, "[A]ll my granddaughters I compliment because most of the time they dress and look very decent and noble."  However, he denied telling the victim that he wanted to marry her.

Following deliberations, the jury convicted the Defendant of sexual battery as charged in the indictment.  The trial court sentenced the Defendant to two years' supervised probation and ordered him to undergo a sex offender evaluation and register on the Sex Offender Registry.  On May 5, 2014, the Defendant filed a motion for new trial, which was denied by the trial court on June 12, 2014.  This timely appeal followed.

## ANALYSIS

On appeal, the Defendant challenges the sufficiency of the evidence supporting his conviction for sexual battery.  He contests the victim's characterization of their encounter in his bedroom and insists that the State failed to establish that he touched the victim's breast for the purpose of sexual arousal or gratification.  The State responds that based upon the evidence presented, a rational juror could find beyond a reasonable doubt that the Defendant was guilty of sexual battery.  We agree with the State.

When considering the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence.  State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).  When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt."  "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict."  State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two.  State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn.

1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. Id.

In the case sub judice, the Defendant was convicted of sexual battery, which is defined, as relevant to this case, as the "unlawful sexual contact with a victim by the defendant . . . accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the contact that the victim did not consent." T.C.A. § 39-13-505. Sexual contact includes "the intentional touching of the victim's . . . intimate parts, or the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification[.]" Id. § 39-13-501(6). Intimate parts includes "semen, vaginal fluid, the primary genital area, groin, inner thigh, buttock or breast of a human being." Id. § 39-13-501(2).

The determination of whether the contact was for the purpose of sexual arousal or gratification is a question of fact for the jury. State v. Mahlon Johnson, No. W2011-01786-CCA-R3-CD, 2013 WL 501779, at *10 (Tenn. Crim. App. Feb. 7, 2013) (citing State v. Anthony Lee Hill, No. E2003-02998-CCA-R3-CD, 2005 WL 623244, at *5 (Tenn. Crim. App. Mar. 17, 2005), perm. app. denied (Tenn. Oct. 10, 2005)). Further, intent in sexual battery cases is often proved by circumstantial evidence, State v. Hayes, 899 S.W.2d 175, 180 (Tenn. Crim. App. 1995), and jurors may "use their common knowledge and experience in making reasonable inferences from evidence," State v. Meeks, 876 S.W.2d 121, 131 (Tenn. Crim. App. 1993) (concluding that the jury could have drawn on common knowledge to reasonably infer that the defendant grabbed the victim's breast for the purpose of sexual gratification). Additionally, this court has previously held that "there is no requirement that the sexual contact itself be for sexual arousal or gratification." State v. Roy Chisenhall, No. M2003-00956-CCA-R3-CD, 2004 WL 1217118, at *3 (Tenn. Crim. App. June 3, 2004). The statute does not require that the defendant become sexually aroused or gratified but merely requires touching that may

be "reasonably construed as being for the purpose of sexual arousal or gratification." Id. (internal quotation marks and citations omitted). The testimony of a minor victim, alone, is sufficient to uphold a conviction for sexual battery so long as it establishes the elements of the offense. See State v. Smith, 42 S.W.3d 101, 106 (Tenn. Crim. App. 2000).

Taken in the light most favorable to the State, the evidence in this case established that the Defendant led the victim to his bedroom where the two were alone. The victim testified that once inside of the Defendant's room, the Defendant told her that she was pretty and that he would like to marry her. He then hugged her and kissed her on the mouth. She testified that he put his tongue in her mouth while kissing her and groped or stroked her breast. After the victim pulled away from the Defendant, the Defendant told her that he was "just playing" with her. Based on this evidence, we conclude that a rational trier of fact could have found beyond a reasonable doubt that the Defendant touched the victim's "intimate parts" and that the touching "can be reasonably construed as being for the purpose of sexual arousal or gratification[.]" T.C.A. § 39-13-501(2), (6); see Hayes, 899 S.W.2d at 180 (reasoning that the defendant's attempt to put his tongue in the victim's mouth while kissing her provided circumstantial evidence of his intent); see also State v. Michael A. Miller, No. E2000-00930-CCA-R3-CD, 2001 WL 483410, at *6 (Tenn. Crim. App. May 8, 2001), perm. app. denied (Tenn. Nov. 5, 2001) (reasoning that circumstances surrounding the encounter, including the defendant's abruptly ending the encounter upon hearing the victim's older brother walking up the stairs and the defendant's instruction to the victim not to tell his parents what had occurred, provided circumstantial evidence of his intent to touch the victim's penis for the purpose of sexual arousal or gratification). Although the Defendant contested the victim's characterization of their encounter in his bedroom, the jury clearly accredited the victim's account over that of the Defendant as was their prerogative. We will not reweigh or reevaluate this evidence on appeal. See Dorantes, 331 S.W.3d at 379. The Defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing authorities and analysis, we affirm the judgment of the trial court.

_____
CAMILLE R. MCMULLEN, JUDGE